# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| STEEL ERECTORS, INC., for the use and benefit of the United States of America, ) ) ) ) Plaintiff, ) ) v. ) ) AIM STEEL INTERNATIONAL, INC., ) ) Defendant. ) | Case No. CV415-208 |

# ORDER

Several weeks ago, the Court deferred ruling on plaintiff's motion to compel defendant to supplement its Fed. R. Civ. P. 7.1 corporate disclosure statement (doc. 11) by naming its foreign parent company. Doc. 15. Plaintiff offered poor reasons to compel, but, given Rule 7.1's mandate (parties *must* file disclosure statements) and AIM's failure to address the proper legal standard (Local Rule 79.7) for shielding its statement from plaintiff, the Court elected to give AIM additional time to move to seal. *Id.* It has now done so. Doc. 17. In addition, plaintiff's original motion to compel (doc. 11) remains pending, as well as a motion to compel AIM to supplement its interrogatory responses by naming its

foreign parent (doc. 16). Finally, the parties jointly move for an extension of time to complete discovery. Doc. 18.

## A. AIM's Motion to Seal

Under Local Rule 79.7, "[a]ny person desiring to have any matter placed under seal shall present a motion setting forth the grounds why the matter presented should not be available for public inspection. . . . The burden rests upon the moving party to justify . . . sealing. . . . [That party] must rebut the presumption of the openness derived from the First Amendment by showing that closure is essential to preserve some higher interest[1] and is narrowly tailored to serve that interest." "[G]eneral assertions," however, "are not enough. The party wishing to seal a court record must be specific because permanent sealing (sought here) must be narrow." *United States v. Bradley*, 2007 WL 1703232 at *3 (S.D. Ga. June 11, 2007) (footnote added).

AIM's "higher interest" is decreasing competition in the international steel fabrication market in which it competes. *See* doc. 17 at 4. That market, says AIM, has very high entry barriers because of

---

[1] Defining what constitutes a "higher interest" furthered by sealing proves difficult, but one court has characterized it as disclosure that would not promote the values associated with public scrutiny of the judicial process. *See United States v. Sattar*, 471 F. Supp. 2d 385, 388 (E.D.N.Y. 2007).

2

costs "associated with initial organization, [and] startup." *Id.* at 3. AIM entered the market because its parent company (a foundation based in Panama) located funding for the venture. *Id.* Keeping private "the identity and sources of initial investment of its parent company," will, AIM says, "keep the barrier of entry . . . high, [and] thereby decreas[e] the competition between and among USA-based steel fabricators." *Id.* Hence, AIM concludes, "its privacy interests outweigh the public's right of access." *Id.* In plaintiff's view, however, anti-competitive business interests, absent a recognized privilege or some other legitimate purpose, cannot outweigh the public's interest in the openness of judicial proceedings. Doc. 19 at 3.

The Court agrees. AIM, a foreign corporation owned by a foreign parent, seeks to shield itself from disclosure obligations ordinarily facing any domestic corporation. Take, for example, a Georgia corporation owned by a Delaware parent. Nothing enables the Georgia company to avoid including the parent in its Rule 7.1 disclosure statement. Indeed, the Rule specifically mandates disclosure of "*any* parent corporation." Fed. R. Civ. P. 7.1(a)(1) (emphasis added).

More importantly, AIM offers no reason why its business interests outweigh[2] the public interest in disclosure of companies with whom a federal judge may have a conflict of interest.[3] Instead, it states that (1) entering the international steel market requires much capital; (2) its parent company provided that capital; and (3) revealing the identity of its parent would, somehow, allow other companies access to capital sufficient to enter the international steel market and in doing so reduce AIM's market share. Doc. 17 at 2-3. That all may be true, but nowhere in that reasoning does AIM explain why its interest exceeds the public's interest in disclosure, particularly when, as here, "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Sup. Ct. of Cal. for Riverside Cty.*, 478 U.S.

---

[2] Recall that parties wishing to seal filings "must rebut the presumption of the openness derived from the First Amendment by showing that closure is essential to preserve some *higher* interest and is narrowly tailored to serve that interest." L.R. 7.1.1 (emphasis added). AIM's interests thus must "outweigh" or "exceed" the public's.

[3] Corporate disclosure statements exist "to assist district judges in determining whether they might have a financial interest in a corporate entity that is related to a corporate party in a case before them and therefore requires their recusal." 5 WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1197 (3d ed. 2010). Recusal issues involve "[t]he operations of the courts and the judicial conduct of judges," and thus are "matters of utmost public concern." *Bradley*, 2007 WL 1703232 at * 1 (quoting *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007)).

1, 8 (1986). Put differently, AIM sufficiently describes its interest, but fails to explain the weight of its interest vis-à-vis the public's.

That's not enough. Every party wishing to seal a filing cares deeply about preventing disclosure and many describe their interest in detail. But only those whose interest is more important than the public's interest in disclosure receive sealing consideration. AIM has not shown that its interest rises to that level. Its motion to seal (doc. 17) therefore is **DENIED** and plaintiff's first motion to compel is **GRANTED** (doc. 11). AIM must file, within 7 days of the date this Order is served, an unredacted corporate disclosure statement that lists "any parent corporation," whether foreign or domestic. Fed. R. Civ. P. 7.1(a)(1).

### B. Plaintiff's Motion to Compel Interrogatory Responses

In a related motion to compel, plaintiff seeks more a more detailed response to its interrogatory asking AIM to reveal its foreign parent. Doc. 16. Specifically, plaintiff wants to know the identity of AIM's parent, its contact information, how it has participated in the construction projects underlying this lawsuit, and how much (if any) funding it has provided with respect to the projects. Doc. 16 at 1-2. AIM objected to identifying its parent on relevancy grounds, but revealed that

it "has had no participation in either of the two projects," and "has provided no funding." *Id.* at 2.

Because the Court today requires AIM to identify its parent in its Rule 7.1 statement, and because AIM already provided adequate responses to portions of plaintiff's interrogatory (its parent played no role in and provided no funding for the projects at issue), all that remains to compel (or not) is its parent's contact information.

Motions to compel are governed by the rules of discovery, which:

> 'require the disclosure of all relevant information so that ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts. . . .' *Gonzalez v. ETourandTravel, Inc.*, 2014 WL 1250034 at * 2 (M.D. Fla. Mar. 26, 2014) (quotes and cite omitted). Hence, '[t]he scope of discovery under [Fed. R. Civ. P. 26(b)(1)] is broad and includes 'discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action.' *Hickman v. Taylor*, 329 U.S. 495, 507-08, 67 S.Ct. 385, 91 L.Ed. 451 (1947).' *Id.* Those resisting discovery must 'show specifically how the objected-to request is unreasonable or otherwise unduly burdensome.' *Id.*
>
> *Claims and defenses* determine discovery's scope. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997). 'Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence.' *United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013).' *Gonzalez*, 2014 WL 1250034 at * 2.

*Daniel Def., Inc. v. Remington Arms Co., LLC*, 2015 WL 6142883 at * 2 (S.D. Ga. Oct. 19, 2015).[4]

Plaintiff claims that AIM breached a contract by failing to pay for work plaintiff performed on two construction projects for the federal government. *See* doc. 1 at 2-3. If, says plaintiff, AIM's parent company underfunded AIM or otherwise caused AIM to breach its contracts, plaintiff may have a claim against the parent. Doc. 16 at 3. It wants contact information ostensibly so it can propound discovery aimed at uncovering whether such a claim exists. *Id.* at 4.

Its parent's identity (and thus parental contact info), argues AIM, is not relevant to plaintiff's claims because "[t]here has not been a single piece of information in this matter referring or implying any involvement by AIM's parent organization." Doc. 20 at 3. Indeed, "AIM has testified

---

[4] The recent changes to the Federal Rules of Civil Procedure (in particular, Rule 26), although substantive and substantial, do not change the definition of relevance. Instead, they reemphasize and highlight requirements already present in the Rules, like proportionality. *See* Fed. R. Civ. P. 26. advisory committee note (2015) ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality. . . ."); *Sibley v. Choice Hotels Int'l*, 2015 WL 9413101 at * 2 (E.D.N.Y. Dec. 22, 2015) ("While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii)."). It remains true today both that claims and defenses provide discovery's outer bounds and that "the court is inclined to err in favor of discovery rather than against it.' *McCleod v. Nat'l R.R. Passenger Corp.*, 2014 WL 1616414 at * 3 (S.D. Ga. Apr. 22, 2014) (quotes and citation omitted)." *Remington*, 2015 WL 6142883 at * 2.

that the parent organization that owns AIM had no participation in either of the projects that are the subject of this lawsuit, and further that the parent organization that owns AIM provided no funding with respect to either of the projects." *Id.*

Too, says AIM, for the same reasons its identity is irrelevant, "[t]he identity of AIM's parent organization is not proportional to the needs of this case." *Id.* at 4. Because "AIM's parent organization has not been identified in any way as having any involvement in the issues in this lawsuit," it cannot possibly have information relevant to "the simple breach of contract issues between the parties." *Id.* Allowing discovery into the parent-child relationship thus would, according to AIM, impose a disproportionate (and thus unwarranted) "financial burden on the parties in this simple breach of contract lawsuit." *Id.* at 5.

Given AIM's existing response to plaintiff's interrogatory -- that its parent company had no involvement with and provided no funding for the construction projects at issue -- further discovery into the parent-child relationship is not relevant or "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiff's Complaint contains two run-of-the-mill breach of contract claims against AIM. AIM's parent,

however, apparently played no role in either alleged breach. *See* doc. 16 at 2 ("[T[he foreign entity that owns AIM . . . was not involved in any way with . . . had no participation in . . . [and] provided no funding with respect to the two projects which are the subject of this lawsuit."). Allowing discovery -- particularly "complicated and complex" discovery that "may involve treaties or agreements with foreign governments" (doc. 18 at 2) -- based solely on plaintiff's pure speculation[5] and in the face of existing discovery responses indicating no involvement by AIM's parent in the contracts at issue would needlessly increase the expense of this litigation and, in doing so, subvert Rule 26(b)(1)'s goal of "guard[ing] against redundant or disproportionate discovery." Fed. R. Civ. P. advisory committee note (2015). Hence, plaintiff's motion to compel interrogatory responses is **DENIED**. Doc. 16.

---

[5] Plaintiff contends that it "may have claims against the parent entity of [AIM], if Plaintiff can show that the parent made a financial decision not to properly fund [AIM] and allowed [AIM] to default on its subcontracts, or other acts of commission or omission took place." Doc. 16 at 3. That's nothing more than a hypothetical without any support in the record, or connection to the Complaint's allegations. Speculation should never bait a relevancy hook, especially here, where potentially expensive international discovery would ensue.

## C. Conclusion

Because AIM's Rule 7.1 statement must include its parent, plaintiff's motion to compel (doc. 11) is **GRANTED**[6] and AIM's motion to seal is **DENIED**. Doc. 17. AIM must file, within 7 days of the date this Order is served, an unredacted corporate disclosure statement that lists "any parent corporation," whether foreign or domestic.

Plaintiff's motion to compel interrogatory responses (doc. 16), however, is **DENIED**. The parties' joint motion to extend discovery 75 days also is **DENIED**.[7] Doc. 18.

---

[6] Under Fed. R. Civ. P. 37(a)(5), when a party's motion to compel succeeds, courts "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless "the opposing party's nondisclosure, response, or objection was substantially justified[,] or . . . other circumstances make an award of expenses unjust." Although plaintiff technically prevailed on its Rule 7.1-related motion to compel (doc. 11), the Court awards no expenses. AIM, though ultimately a loser, made a good faith argument for not disclosing its parent's identity. Perhaps more importantly, the Court's decision to compel disclosure rested on First Amendment and public interest principles, not on any arguments plaintiff made in support of its motion. Reflecting that rationale, granting plaintiff's motion to compel is simply a corollary of denying AIM's motion to seal and not a product of any independent merit plaintiff's motion possessed. An award of expenses therefore would be unjust.

[7] The parties sought a discovery extension in case the Court allowed further inquiry into AIM's parent's identity. Doc. 18 at 1. Although it has compelled AIM to file an unredacted Rule 7.1 statement that includes its parent, the Court refuses to compel AIM to respond to plaintiff's parent-based interrogatory. It did so on relevancy and proportionality grounds, which means that any future discovery plaintiff aims at AIM's parent as a result of the Rule 7.1 disclosure quite likely would fall on the same sword should AIM move for a protective order or plaintiff to compel (again). Put

**SO ORDERED**, this 4th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

differently, this Order likely obviates the need for further discovery into AIM's parent and thus also the need for a discovery extension. If that's not the case, the parties remain free to file additional downwind motions.